**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Darius PETERSON, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.

Filed May 4, 2011.

Max C. Kaufman, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Rebecca Braglio, Public Defender, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE, SHOGAN, ALLEN, OLSON, and OTT, JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals from the November 14, 2008 order granting the motion of Appellee, Darius Peterson, pursuant to Pa.R.Crim.P. 600 ("Rule 600"). The Commonwealth's sole contention on appeal is that the trial court erred in dismissing the charges under Rule 600. After careful review, we reverse and remand.

The pertinent factual and procedural background of this case is as follows. At approximately 9:00 p.m. on March 20, 2006, on-duty Philadelphia Police Officer James Martin was traveling alone when he observed a blue Nissan proceed through a red light at Jasper and Westmoreland Streets in Philadelphia. The officer pursued Appellee, the driver of the Nissan, and conducted a traffic stop. As the officer approached the vehicle, he noticed Appellee making furtive movements and acting nervous.

Officer Martin then witnessed Appellee open the driver's side door and discard a bag containing empty clear and blue-tinted bags. In addition, he saw Appellee remove an item from his waistband and place it on the floor of the vehicle. Due to these actions, Officer Martin retreated and waited for backup to arrive before re-approaching Appellee. When police removed Appellee from the vehicle, Appellee attempted to flee and a brief struggle occurred. After subduing Appellee, police recovered a loaded firearm from the front seat of the vehicle, cocaine, and a digital scale with cocaine residue.

The Commonwealth filed its initial complaint on March 21, 2006, charging Appellee with possession of a controlled substance with intent to deliver ("PWID"), carrying a firearm without a license, possession of a controlled substance, possession of drug paraphernalia, resisting arrest, carrying firearms on public streets or public property in Philadelphia, recklessly endangering another person ("REAP"), and harassment. Thereafter, on March 27, 2006, the date of Appellee's preliminary hearing, the court appointed counsel for Appellee.

Since counsel was appointed that same day and the Commonwealth represented that it did not have the test results from the narcotics seized from Appellee, the municipal court granted a joint continuance until June 12, 2006. At the June 12, 2006 re-scheduled preliminary hearing, the Commonwealth was ready to present its case; however, Appellee indicated an intent to retain private counsel. Accordingly, the court granted a continuance until August 21, 2006. Prior to that date, police arrested Appellee on an unrelated matter

in Bucks County, Pennsylvania. Thus, Appellee failed to appear for the August 21, 2006 hearing.

As a result of Appellee's failure to appear and unaware of his arrest, the court herein issued a bench warrant for Appellee. Subsequently, in December 2006, the prosecution learned of Appellee's imprisonment and the court withdrew the bench warrant and rescheduled Appellee's preliminary hearing for January 16, 2007. However, on that date, Officer Martin was subject to a subpoena to testify in a separate matter in a different courthouse. Therefore, the Commonwealth was unable to present evidence and the court continued the proceeding to February 1, 2007. On that date, the arresting officer was unavailable due to training; the matter was again continued until February 20, 2007. As the result of an apparent mix-up, Officer Martin exited the courthouse prior to the call of Appellee's case on February 20, 2007. The court thereupon dismissed the case for lack of prosecution due to a local rule.[1]

Over one year later, on March 19, 2008, the Commonwealth re-filed the charges against Appellee and requested that the court set a preliminary hearing at the earliest possible date.[2] The court scheduled the matter for April 25, 2008. Officer Martin again was unavailable due to training, and Appellee, who was in state custody, was not present. Subsequently, on June 17, 2008, the court conducted Appellee's preliminary hearing and bound over for trial all of the charges, except the REAP count. On September 9, 2008, Appellee filed a Rule 600 motion, asserting that the Commonwealth had not brought him to trial within 365 days of the filing of the initial complaint. The court, on October 28, 2008, held a hearing on the motion and heard argument before granting Appellee's motion and dismissing the charges with prejudice on November 14, 2008.

The Commonwealth filed a timely notice of appeal and concurrently served on the trial court, pursuant to Pa.R.A.P. 1925(b), a concise statement of errors complained of on appeal. The trial court authored a 1925(a) opinion in which it opined that the Commonwealth failed to exercise due diligence both prior to the dismissal and in re-filing the charges against Appellee thirteen months after that dismissal. A panel of this Court, with one Judge dissenting, held that the Commonwealth must exercise due diligence in prosecuting a case after the dismissal of the initial complaint and re-file the charges at the earliest opportunity, and affirmed the trial court on that basis alone. The Court granted *en banc* review, and this matter is now ready for resolution.

■■■■ Our standard and scope of review in analyzing a Rule 600 issue are both well-settled.

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not

---

1. Philadelphia Municipal Court local rule of criminal procedure 555 permits a municipal court judge to dismiss a case at a preliminary hearing where the Commonwealth's witnesses fail to appear three times.

2. The Commonwealth was not required to file an appeal from the original dismissal before re-filing the charges against Appellee. *Commonwealth v. Jones*, 450 Pa.Super. 433, 676 A.2d 251 (1996) (discussing that an appeal to the Court of Common Pleas from a Philadelphia Municipal Court dismissal is only mandated where re-filing the complaint would not cure the defect that caused the dismissal).

merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review ... is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos,* 936 A.2d 1097, 1100 (Pa.Super.2007) (*en banc*) (quoting *Commonwealth v. Hunt,* 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc*)).

Rule 600(A)(2) states that when a complaint is filed against a defendant who is incarcerated, trial must begin 180 days from the date on which the complaint was filed. Similarly, Rule 600(A)(3) requires that trial commence for a defendant at liberty on bail within 365 days of the filing of the written complaint.[3] The rule further provides that certain periods are excluded from Rule 600 calculation. Specifically, the rule delineates in pertinent part:

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. 600(C).

Preliminarily, we note that the plain language of Rule 600 does not implicate a due diligence inquiry until, as calculated from the filing of an existing complaint, the applicable period has elapsed and a defendant files a motion to dismiss the charges. Indeed, the language of Rule 600 ordinari-

---

3. Appellant made bail after the first complaint was filed.

ly applies to defendants on bail.[4] However, once a complaint has been dismissed, no charges are pending, the person is no longer a defendant, nor on bail, and Rule 600 generally would not apply.

Nevertheless, our Supreme Court has applied Rule 600 to situations where the prosecution has withdrawn an original complaint and subsequently re-filed that complaint. In *Commonwealth v. Meadius,* 582 Pa. 174, 870 A.2d 802 (2005), the Commonwealth filed a criminal complaint on January 16, 2001. The preliminary hearing was originally set for February 8, 2001; however, the Commonwealth requested a continuance because the prosecutor was attending a continuing legal education class. The court rescheduled the hearing for March 8, 2001, but the Commonwealth failed to appear. As a result, the court set the matter down for March 22, 2001. On that date, the Commonwealth was unable to proceed because two essential witnesses did not appear. The magisterial district judge refused to grant a continuance and stated that he would dismiss the charges if the Commonwealth did not withdraw the case. Accordingly, the prosecution withdrew the charges.

Five days later the Commonwealth reinstituted the identical charges against the defendant therein. The defendant waived his right to a preliminary hearing and eventually the case was scheduled for trial on February 4, 2002, over 365 days from the filing of the original complaint. Following a hearing on the defendant's Rule 600 motion, the trial court dismissed the charges with prejudice, and the Commonwealth appealed. This Court reversed, finding that the Commonwealth did not attempt to evade Rule 600. Our Supreme Court granted allowance of appeal and reinstated the trial court's decision.

 Prior to *Meadius,* Pennsylvania law held that the Rule 1100 run date in cases involving two complaints began with the second complaint where there was no intent by the Commonwealth to evade the speedy-trial rule.[5] *Commonwealth v. Simms,* 509 Pa. 11, 500 A.2d 801 (1985) and *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985); *see also Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981); *Commonwealth v. Sires,* 284 Pa.Super. 50, 424 A.2d 1386 (1981). The *Meadius* Court, in a four to three decision, expanded its prior holdings and determined that even where the Commonwealth does not intend to circumvent Rule 600, the Commonwealth must also demonstrate that it proceeded diligently in prosecuting the original case in order to receive the benefit of the run date commencing from the filing of the second complaint. Thus, the law requires that we analyze whether the Commonwealth was duly diligent in prosecuting the first complaint. If the prosecution was diligent, the applicable run date, pursuant to *Meadius,* is triggered when the Commonwealth files the second complaint.

Initially, the Commonwealth asserts that it was duly diligent in prosecuting the original complaint and did not intend to evade the timeliness provisions of Rule 600 by re-filing the charges; therefore, the proper run date for purposes of Rule 600

---

**4.** We are cognizant that our Supreme Court has applied Rule 600 to capital defendants who are not eligible for bail. *See Commonwealth v. Solano,* 588 Pa. 716, 906 A.2d 1180 (2006). Additionally, this Court recently applied Rule 600 to a defendant who was never released on nominal bond pursuant to Rule 600(E) and therefore was not free on bail at the time that the 365–day period elapsed. *See Commonwealth v. Bradford,* 2 A.3d 628 (Pa.Super.2010).

**5.** Rule 1100 was the predecessor to Rule 600.

is from the filing of the second complaint. Further, the Commonwealth contends that even if the mechanical run date[6] begins from the filing of the first complaint, Rule 600 would be tolled between the dismissal and re-filing of the charges, and the adjusted run date would be June 24, 2009.[7] Commonwealth's brief at 34. Appellee counters that the Commonwealth did not exercise due diligence in prosecuting the initial complaint and that, even if the prosecution was duly diligent while the initial case was pending, its lack of diligence in re-filing the charges warranted dismissal under Rule 600.

"Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 606 Pa. 51, 994 A.2d 1083, 1089 (2010). Herein, the first three continuances from March 27, 2006 to June 12, 2006 to August 21, 2006 to January 16, 2007, are attributable to Appellee and constitute excludable time. Additionally, the period between January 16, 2007 and February 20, 2007 consists of excusable delay. A panel of this Court in *Commonwealth v. Booze*, 953 A.2d 1263 (Pa.Super.2008), delineated the difference between excludable time and excusable delay, stating:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, ... any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Booze, supra* at 1272–1273. In *Hunt, supra*, this Court determined that a joint continuance is excludable delay. Hence, the period from March 27, 2006 until June 12, 2006, is excludable time and cannot be held against the Commonwealth. Further, Appellee requested a continuance to retain private counsel on June 12, 2006, which caused the case to be continued to August 21, 2006. Therefore, this delay is excludable time. In addition, Appellee failed to appear for the August 21, 2006 preliminary hearing because of an unrelated arrest. Appellee did not notify the Commonwealth of this arrest, hence, the delay between August 21, 2006 and January 16, 2007 is attributable to him. *See Commonwealth v. Baird*, 601 Pa. 625, 975 A.2d 1113, 1118 (2009); *Commonwealth v. Logsdon*, 803 A.2d 1289 (Pa.Super.2002).

Since Appellee failed to appear at the August 21, 2006 preliminary hearing, the court re-scheduled the next preliminary hearing on January 16, 2007. Unfortunately, on that date the arresting officer was unavailable. It is undisputed that his unavailability was occasioned by the officer being subpoenaed to testify in a different matter at the family court building located at 1801 Vine Street, Philadelphia. Indeed, Appellee stipulated that the officer would testify that he was subpoenaed for another

---

6. The mechanical run date is calculated by adding 365 days to the date the criminal complaint is filed. *Commonwealth v. McNear*, 852 A.2d 401 (Pa.Super.2004). That date may, of course, be adjusted.

7. Since we conclude that the Commonwealth is entitled to relief based upon its first position, we do not reach the merits of its secondary argument.

preliminary hearing on the same date. *See* N.T., 10/29/08, 18–19. Accordingly, the evidence of record establishes that there was more than a mere assertion that the officer was unavailable.[8] Therefore, this time is counted against Appellee. *Commonwealth v. Corbin*, 390 Pa.Super. 243, 568 A.2d 635, 638 (1990) ("according to the record, the Commonwealth was available, with its police witness, on five different occasions when appellee failed to appear. Indeed, appellee's failure to appear on May 24, 1988, necessitating his apprehension, was the sole cause of the bench warrant hearing at which his case was inadvertently listed during the police witness's vacation."). Instantly, the police witness appeared at three prior preliminary hearings, on March 27, 2006, June 12, 2006, and August 21, 2006, and the only reason the matter was re-scheduled for a time when the officer was responding to another subpoena, and was therefore unavailable, was due to Appellee's prior failure to appear.

Moreover, the prosecution in the case *sub judice* had no control over the officer's inability to appear and the sixteen-day time frame from January 16, 2007 until February 1, 2007 is excusable. *Commonwealth v. Anderson*, 959 A.2d 1248, 1251 (Pa.Super.2008) (prosecutor's representation that officer, who may not have been a necessary witness, had broken his back was sufficient to show Commonwealth was exercising diligence); *Commonwealth v. Staten*, 950 A.2d 1006, 1010 (Pa.Super.2008) ("the Commonwealth stood ready but for the unavailability of a necessary witness, an arresting police officer who, beyond the control of the Commonwealth, had been assigned to serve warrants that day."); *Commonwealth v. Williams*, 317 Pa.Super. 456, 464 A.2d 411, 418 (1983) (expert witness was required to testify elsewhere on two of the available trial dates which was a reason beyond the Commonwealth's control, and not due to a lack of diligence on the part of the prosecution); *Corbin, supra*.[9]

Similarly, the officer was unable to be present at the February 1, 2007 listing because he was at training and the matter was promptly scheduled for February 20, 2007.[10] Therefore, until February 20,

---

**8.** The stipulation went as follows:

Prosecutor: Officer Martin was present [at the Rule 600 hearing] today and there has been a stipulation by and between counsel that if Officer James Martin were called to testify, Badge 4225, first of all, he would testify as to the listing a [sic] January 16, 2007, that he was, in fact, subpoenaed to 1801 Vine Street on that morning.

Court: Was he subpoenaed to the [January 16, 2007] preliminary hearing?

Prosecutor: He was also subpoenaed to the [January 16, 2007] preliminary hearing. And he, according to police protocol, he did go to 1801 Vine Street and was present there and the [current] case got a continuance on that date in 405 for this preliminary hearing.

Also, if Officer James Martin was called to testify, he would testify that on February 20, 2007, he did come. He was subpoenaed for court. He did come in to courtroom 405 on that date. He was mistakenly told by the court liaison that the case had been continued and he was signed out.
N.T., 10/28/08, at 18–19.

**9.** We acknowledge Appellee's argument before the court *en banc* is that the police and the Commonwealth should be considered one entity for purposes of Rule 600. Appellee relies on *Commonwealth v. Martin*, 246 Pa.Super. 407, 371 A.2d 903 (1977) for that position. However, the Court stated in *Martin* that the arresting officer's knowledge of the whereabouts of the defendant was attributable to the Commonwealth and therefore the defendant was available. *Martin* simply has no bearing on the Commonwealth's control of the availability of a police officer as a witness.

**10.** We are aware that during the Rule 600 hearing, the Commonwealth indicated that the period between February 1, 2007 and February 20, 2007 would be counted against

2007, the date the municipal court dismissed Appellee's case, at most nineteen days are attributable to the Commonwealth. *But see Commonwealth v. Hollingsworth,* 346 Pa.Super. 199, 499 A.2d 381 (1985) (*en banc*) (opinion announcing judgment of court) (five judges concluding that officer training at drug school was beyond control of Commonwealth). On that date, the officer appeared, but exited the courtroom prior to the case being called. The parties stipulated that Officer Martin, if called to testify, would state that a court liaison officer incorrectly informed him that the case was continued and he was permitted to leave.[11] Hence, the record establishes that the delays that occurred during the initial case were beyond the control of the Commonwealth. Accordingly, we conclude that the Commonwealth exercised due diligence in prosecuting the first complaint.

■ Since we find that the Commonwealth exercised due diligence prior to the original dismissal, we now consider whether the Commonwealth must, under the dictates of Rule 600, act with due diligence in re-filing a criminal complaint. In other words, do we take into account the delay between the dismissal of the initial complaint and the filing of a subsequent complaint in calculating the Rule 600 run date? We hold that such delay is not within the parameters of Rule 600 since no complaint is pending during this period, and on its face, the language of Rule 600 is inapplicable.

The trial court, relying primarily on *Meadius, supra,* found that the Commonwealth was not duly diligent in the thirteen-month period between the dismissal and re-filing of the complaints and counted that period against the Commonwealth and dismissed the charges. The case herein, however, has two distinguishing factors from *Meadius.* First, the Commonwealth did not withdraw the charges at any point, nor did the Commonwealth request that the court dismiss the charges; rather, a competent judicial authority dismissed the first complaint without regard to the Commonwealth's position.

■ Second, and more importantly, the factual discussion in *Meadius* focused exclusively on the Commonwealth's actions prior to the withdrawal of the first complaint. *Meadius, supra* at 807–808. The Court in *Meadius* held that the Commonwealth did not exercise due diligence in prosecuting the first complaint; it did not speak to the issue of whether the Commonwealth, under Rule 600, must exercise due diligence in re-filing a second complaint. *Id.* at 807 ("we cannot say that the trial court erred in charging the Commonwealth with responsibility for the multiple delays leading up to the withdrawal of charges."). Indeed, a Rule 600 analysis pertains to the Commonwealth's actions during a pending action and not after the court has dismissed a charge or charges. *See generally Commonwealth v. Leatherbury,* 499 Pa. 450, 453 A.2d 957 (1982); *Commonwealth v. Navarro,* 499 Pa. 279, 453 A.2d 308 (1982); *Commonwealth v. Johnson,* 487 Pa. 197, 409 A.2d 308 (1979);

---

the prosecution; however, the Commonwealth did not concede that it did not exercise due diligence in prosecuting Appellee's case. N.T. Rule 600 Hearing, 10/28/08, at 17–18.

11. Appellee asserts that the trial court's factual findings demonstrate that a prosecutor signed the officer out. This contention is based upon statements made by the trial court

during the Rule 600 hearing regarding the normal practice in Philadelphia that an assistant district attorney will sign out witnesses. However, the trial court's passing remarks did not constitute a finding of fact since it was never contained within the court's findings and is unsupported by the evidence of record.

*Commonwealth v. Sweeney*, 376 Pa.Super. 476, 546 A.2d 624 (1988); *Commonwealth v. Fuchs*, 372 Pa.Super. 499, 539 A.2d 1307 (1988).

Appellee, nevertheless, in leveling his argument posits that this case is similar to this Court's decision in *Commonwealth v. Surovcik*, 933 A.2d 651 (Pa.Super.2007), upon which the trial court also relied.[12] In *Surovcik*, a two-judge panel of this Court considered whether the Commonwealth exercised diligence with respect to the prosecution "prior to the withdrawal of the original charges[.]" *Surovcik, supra* at 655.[13] The facts underlying that case involved a Commonwealth complaint filed on July 19, 2004 against a mother for the alleged abuse of her minor child. The Commonwealth also charged the father on the same date. The prosecution withdrew the charges against the mother, on January 27, 2005, in exchange for her cooperation against her then husband, who subsequently pled guilty. However, on May 4, 2005, the Commonwealth re-filed the identical charges against the mother. She filed a motion to dismiss on August 24, 2005, which the trial court denied. Thereafter, the defendant proceeded to trial and was convicted of endangering the welfare of children. This Court reversed the conviction after determining that the prosecution violated Rule 600.

We acknowledge that language contained in *Surovcik* states that the Commonwealth must act "with due diligence in bringing charges against [a]ppellant at the earliest possible time." *Surovcik, supra* at 656. That language, however, must be evaluated in its context. This Court, in analyzing the argument set forth by the defendant in *Surovcik*, focused on whether the prosecution acted with due diligence before withdrawing the charges. Indeed, immediately prior to the above quoted reference, the panel stated, "Appellant presented to the trial court the argument that the Commonwealth did not exercise due diligence with respect to this prosecution prior to its withdrawal and re-filing of the charges[.]" *Id.* at 655.

We then remarked that, "the trial court did not consider the Commonwealth's diligence with regard to this prosecution prior to the withdrawal of the original charges against [a]ppellant." *Id.* To the extent that *Surovcik* can be read to infer a duty of due diligence after the dismissal of a complaint, when no prosecution is pending, such an interpretation is contrary to *Meadius, supra*, and the plain language of Rule 600. Additionally, in *Surovcik*, unlike the underlying case, the Commonwealth could have proceeded with the prosecution of the case at the time it withdrew the charges.[14]

---

**12.** The trial court, although providing the correct citation to the *Surovcik* opinion in its decision, referred to the matter as *Commonwealth v. Allyse*. The middle name of the defendant in *Surovcik* was Allyse.

**13.** The third judge did not participate in the decision.

**14.** The *Surovcik* Court also did not analyze whether the running of Rule 600 was tolled between the dismissal of the first complaint and the filing of the second complaint. Decisional law prior to our Supreme Court's pronouncements in *Simms* and *Meadius*, tolled

Rule 600 after charges were dismissed. *Commonwealth v. Leatherbury*, 499 Pa. 450, 453 A.2d 957 (1982); *Commonwealth v. Navarro*, 499 Pa. 279, 453 A.2d 308 (1982); *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979); *Commonwealth v. Sweeney*, 376 Pa.Super. 476, 546 A.2d 624 (1988); *Commonwealth v. Fuchs*, 372 Pa.Super. 499, 539 A.2d 1307 (1988).

In *Leatherbury* and *Navarro*, our Supreme Court unequivocally held that Rule 600's predecessor, Rule 1100, was tolled during the time frame between the dismissal of a first complaint and the filing of a second complaint, unless the Commonwealth attempted

*Meadius* and *Surovcik* both stand for the position that the Commonwealth must exercise due diligence **before** the withdrawal of an original complaint; consequently, the proper focus of the trial court when two identical complaints are at issue should be on whether the Commonwealth exercised due diligence in prosecuting the original complaint, not on whether it exercised due diligence in re-filing the second complaint. Where the Commonwealth exercises due diligence in prosecuting the original criminal complaint, the time period between the dismissal of the first complaint and the re-filing of the second complaint is irrelevant for purposes of Rule 600 and the Commonwealth is only required to re-file within the applicable statute of limitations. Such a holding is consistent with the purpose of Rule 600. As noted by our Supreme Court in *Johnson*, the purpose of our speedy trial procedural rule is "concerned with limiting the period of anxiety and concern accompanying public accusation." *Johnson, supra* at 310 (internal quotations omitted). Since Appellee was not charged in the intervening period or incarcerated on that case, he was free from such concerns. *Id.* at 311.

In sum, when a trial court is faced with multiple identical criminal complaints, it must first determine whether the Commonwealth intended to evade Rule 600's timeliness requirements by withdrawing or having *nolle prossed* the charges. If the prosecution attempted to circumvent Rule 600, then the mechanical run date starts from the filing of the initial complaint, and the time between the dismissal of one complaint and the re-filing of the second complaint is counted against the Commonwealth. However, where the prosecution has not attempted to end run around the rule, and a competent authority properly dismissed the case, the court must next decide if the Commonwealth was duly diligent in its prosecution of the matter. Where the prosecution was diligent, the inquiry ends and the appropriate run date for purposes of Rule 600 begins when the Commonwealth files the subsequent complaint.

Herein, the trial court erred by finding that the Commonwealth did not exercise due diligence and by extending the rationale of *Meadius* and *Surovcik* to require, pursuant to Rule 600, that the Common-

---

to evade the speedy trial requirements. The *Johnson* Court held similarly, tolling then Rule 1100, between a first grand jury's failure to indict and a second grand jury's indictment. *Johnson, supra* at 310. This is in contrast to starting the run date anew at the filing of a second complaint. Since these cases have not been overturned, such an inquiry appears to have been necessary. Nonetheless, these cases did not implicate a due diligence issue. However, our Supreme Court in *Meadius* discussed both *Navarro* and *Johnson*, but did not overturn either case.

We are aware that in *Meadius* the period between the withdrawal of the complaint and the re-filing was only five days. Even excluding those days, the Commonwealth exceeded the 365–day time frame to bring the defendant therein to trial. On the other hand, the prosecution dropped the charges against the defendant in *Surovcik* on January 27, 2005,

and reinstated the identical charges on May 4, 2005. If the Court considered Rule 600 to be tolled during that period, 365 days did not elapse between the filing of the initial complaint on July 19, 2004 and the defendant's submission of a Rule 600 motion on August 24, 2005. Nevertheless, we acknowledge that *Johnson, Sweeney,* and *Fuchs* did not involve two separate criminal complaints, and the effect of *Meadius* on whether Rule 600 should be tolled when no complaint is pending is less than clear. We do not reach the question of whether Rule 600 would be tolled during the period between the dismissal in this case and the subsequent re-filing since it is unnecessary to our disposition. Accordingly, the question of whether Rule 600 would be tolled after a complaint is dismissed or withdrawn and then re-filed where the prosecution did not exercise due diligence in prosecuting the initial complaint must be left for another day.

wealth proceed diligently in prosecuting a non-existent case by re-filing charges at the earliest possible time. As 365 non-excludable and non-excusable days did not pass between the filing of the second complaint and the filing of Appellee's Rule 600 motion, we reverse.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge MUSMANNO joins the Majority and joins the Concurring Opinion by Judge DONOHUE.

Judge DONOHUE files a Concurring Opinion in which MUSMANNO, BENDER, and SHOGAN, JJ. Join.

Judge BENDER Concurs in the Result.

Judge SHOGAN Concurs in the Result.

CONCURRING OPINION BY DONOHUE, J.:

I join in the well-reasoned Majority Opinion because I agree that, in the case at bar, the Pa.R.Crim.P. 600 time period commences with the filing of the second criminal complaint. Also, I agree that under the circumstances presented here, no due diligence analysis is required for the time period between the dismissal of the first complaint and the filing of the second complaint. My sole point of disagreement with the thorough Majority Opinion is the conclusion that the Commonwealth carried its burden of proving that it acted with due diligence when a police officer failed to appear at a scheduled preliminary hearing. For the reasons that follow, I do not believe that the Commonwealth met its burden of establishing its diligence in two instances where a police officer failed to appear. However, because the resulting continuances required only a combined 35 days of delay, and the complaint was not dismissed at the Commonwealth's behest, I do not believe the Commonwealth's lack of diligence in two isolated instances changes the outcome reached by the Majority.

As noted in *Commonwealth v. Meadius*, 582 Pa. 174, 180–83, 870 A.2d 802, 805–08 (2005), our focus must be whether the dismissal and refiling of charges is a result of the Commonwealth's lack of due diligence or "intent to evade" the dictates of Rule 600. *See also Commonwealth v. Surovcik*, 933 A.2d 651, 654 (Pa.Super.2007) (same), *appeal denied*, 597 Pa. 715, 951 A.2d 1163 (2008). Given the circumstances of the dismissal of the first complaint and the comparatively brief period of delay resulting from the Commonwealth's failure to procure a police officer's appearance at two preliminary hearings, I cannot conclude that the dismissal of the first complaint was the result of the Commonwealth's lack of due diligence or "intent to evade" Rule 600.

On the due diligence issue, it is well established that the Commonwealth bears the burden of proving, by a preponderance of the evidence, that it acted with due diligence in complying with Rule 600. *Commonwealth v. Kearse*, 890 A.2d 388, 393 (Pa.Super.2006), *appeal denied*, 588 Pa. 788, 906 A.2d 1196 (2006). Here, as discussed in more detail later, the Commonwealth asserted that the witness, the arresting officer, was subpoenaed but was unable to appear at a scheduled hearing due to other obligations. In support of its conclusion that the police officer's absence from the preliminary hearings was beyond the Commonwealth's control, the Majority relies on *Commonwealth v. Staten*, 950 A.2d 1006, 1010–11 (Pa.Super.2008). In *Staten*, a police officer failed to appear to testify because he was on assignment elsewhere. This Court concluded that the police officer's conflicting assignment was beyond the Commonwealth's control and thus not indicative of a lack of due dili-

gence. *Id.* at 1010–11 [1]; *see also Commonwealth v. Corbin,* 390 Pa.Super. 243, 568 A.2d 635, 638 (1990) (no lack of due diligence where a trial was inadvertently scheduled to take place while a police officer was on vacation) (*superseded by statute on other grounds as stated in Kearse,* 890 A.2d at 393).

This Court has been unfortunately inconsistent in its analysis of the Commonwealth's evidence in support of carrying its burden of proof when called upon to decide whether and when a police officer's failure to appear to testify is attributable to the Commonwealth's lack of diligence. In *Corbin,* for example, to establish its due diligence, the Commonwealth produced a court liaison police officer who testified as to the protocol in place within the department to avoid conflicts between vacations and hearings for which subpoenas were issued to police officers. The court liaison officer further testified that the case was inadvertently listed for trial during a police officer's vacation because of an "overburdened docket coupled with an inadequate number of staff present at the detention center[.]" *Corbin,* 568 A.2d at 638. In light of the court liaison's testimony explaining the failure of the protocol upon which the Commonwealth relied, we ruled that the delay resulting from the police officer's absence was beyond the Commonwealth's control. *See also Commonwealth v. Anderson,* 959 A.2d 1248, 1249–52 (Pa.Super.2008) (delay not chargeable to the Commonwealth where the record showed that a police officer was unavailable to testify due to a serious injury he sustained on the job).

In contrast with the burden of coming forward with evidence placed on the Commonwealth in *Corbin,* in cases such as *Staten,* this Court has accepted, without analysis and without any apparent evidence adduced by the Commonwealth, that a police officer's unavailability was beyond the Commonwealth's control. *Staten,* 950 A.2d at 1010–11; *see also Commonwealth v. Brawner,* 381 Pa.Super. 265, 553 A.2d 458, 461 (1989) (accepting without analysis that a police officer's unavailability due to vacation was beyond the Commonwealth's control), *appeal denied,* 522 Pa. 617, 563 A.2d 886 (1989); *Commonwealth v. Bright,* 303 Pa.Super. 98, 449 A.2d 596, 598 (1982) (same).

In other cases, the absence of any evidence from the Commonwealth as to its due diligence has led us to conclude that the Commonwealth failed to carry its burden. For example, in *Commonwealth v. Johnson,* 405 Pa.Super. 363, 592 A.2d 706, 706–07 (1991), the record showed that delays were occasioned by the Commonwealth's initial failure to subpoena a police officer and its subsequent failure to address the subpoena to the appropriate police district. We concluded that the Commonwealth failed to exercise due diligence in bringing the defendant to trial:

> The only effort on the Commonwealth's part of which we are aware is that one subpoena was sent to the wrong office. There is no evidence that the subpoena was monitored in any fashion by the district attorney's office, or that the Commonwealth filed the subpoena in a sufficient amount of time to allow for error so as to make the witness' appearance on March 15, 1990 a probability. It has been held that the mere assertions of the Commonwealth as to its due diligence in bringing in a witness for trial are insufficient to support a request for

---

1. *Staten* was decided under Pa.R.Crim.P. 1013, which governs the speedy trial requirement in a municipal court case. We analyze claims under Rules 600 and 1013 according to the same standard. *Staten,* 950 A.2d at 1009–10.

extension in the absence of evidence supporting such assertions.

*Id.* at 710; *see also Commonwealth v. Johnson,* 852 A.2d 315, 317–18 (Pa.Super.2004) (Prosecutor's assertions of diligence insufficient; the Commonwealth must make a record of its diligence), *appeal denied,* 583 Pa. 680, 877 A.2d 460 (2005);

Likewise, in *Commonwealth v. Taylor,* 409 Pa.Super. 589, 598 A.2d 1000, 1002 n. 2 (1991) *appeal denied,* 531 Pa. 654, 613 A.2d 559 (1992), this Court noted that the delay ensuing from the Commonwealth's "unexplained failure" to subpoena a police officer was chargeable to the Commonwealth. Furthermore, the Commonwealth argued in *Taylor* that its failure to provide timely discovery was beyond its control because of a delay in receiving a requested police report. We rejected the Commonwealth's argument, reasoning that "the Commonwealth could have done more in its attempt to secure the report from the police than merely requesting the report two or three times. Its failure to do so shows a lack of due diligence." *Id.* at 1002–03.[2]

The *Johnson* Court[3] relied on *Commonwealth v. Browne,* 526 Pa. 83, 89, 584 A.2d 902, 905 (1990), in which our Supreme Court chastised this Court for its apparent willingness to "accept any and every excuse for failure to bring a criminal case to trial within the period prescribed by Rule 1100."[4] The Supreme Court in *Browne* rejected the Commonwealth's argument that delay resulting from Lancaster County's "term system of criminal court" was beyond the Commonwealth's control. *Id.* at 89–90, 584 A.2d at 905. "[The Lancas-

ter County District Attorney's Office] and those like it must, to be diligent, have simple systems in place to carry out the routine duties of the office. Sound reason requires no less." *Id.* at 90, 584 A.2d at 906; *see also Commonwealth v. Lopez–Melendez,* 435 Pa.Super. 62, 644 A.2d 1235, 1239 (1994) (rejecting the Commonwealth's argument that a delay in processing the defendant's application for accelerated rehabilitative disposition was beyond the Commonwealth's control); *Commonwealth v. McCutcheon,* 339 Pa.Super. 8, 488 A.2d 281, 284 (1985) (Commonwealth not diligent where papers concerning the defendant's prosecution were temporarily misfiled, because Commonwealth had no system for assuring that cases were properly processed).

I believe this *en banc* panel should take the opportunity to restore uniformity to the Superior Court's jurisprudence and apply the principles set forth by our Supreme Court in *Browne. Browne* mandates that district attorney's offices have systems in place to carry out routine duties, and one of the routine duties of any district attorney's office is procuring a police officer's testimony in the prosecution of its case. In the instant matter, the Commonwealth failed to carry out that routine duty on several occasions and did not offer any evidence from which I can conclude that the failure was beyond the Commonwealth's control. I believe this Court should state unequivocally that a mere assertion by the Commonwealth that a witness was subpoenaed but was unavailable to appear and testify does not support a conclusion that the resulting period of delay was beyond the Commonwealth's

---

**2.** Like *Staten, Taylor* was decided under Rule 1013.

**3.** Here we refer to the 1991 panel.

**4.** Though *Browne* was decided under the predecessor to current Rule 600, the due diligence component of the successor rule is coterminous. *See Johnson,* 852 A.2d at 317; *see also Meadius,* 582 Pa. at 183, 870 A.2d at 807 (citing *Browne* ).

control. The Commonwealth must meet its evidentiary burden with *evidence* of its diligence. While the Commonwealth's evidence need not establish perfect diligence and reasonable efforts are sufficient, *Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa.Super.2007) (*en banc*), *appeal denied*, 597 Pa. 705, 948 A.2d 803 (2008), actual evidence of systematic efforts to establish compliance with subpoenas is the minimum that is required to establish diligence.

In the case at bar, at the January 16, 2007 preliminary hearing, the prosecutor stated that the arresting officer was subpoenaed to appear both in this case and in an unidentified proceeding at "1801 Vine Street." N.T., 10/28/08, at 17. According to the prosecutor, police protocol was for the officer to prioritize the subpoena for the proceeding at 1801 Vine Street. *Id.* That Peterson stipulated to these facts is of no moment. Our job is to determine whether, as a matter of law, these facts establish an exercise of due diligence by the Commonwealth. I conclude that they do not. The prosecutor's assertions shed no light on what systems the Commonwealth has in place to avoid such conflicts in the first place or how this particular conflict arose despite the Commonwealth's system to avoid it. Merely serving a subpoena and hoping it is honored is not due diligence.

It is the Commonwealth's obligation to prove that it acted with diligence; this Court is not free to assume, based on limited facts, that the Commonwealth was diligent. *See Commonwealth v. Brant*, 272 Pa.Super. 135, 414 A.2d 707, 710 n. 2 (1979) ("[J]udicial surmise as to the reason for the Commonwealth's failure to bring

appellant to trial cannot serve as a substitute for the Commonwealth's affirmative duty to prove, by a preponderance of the evidence, that it has met the requirements of Rule 1100(c)."). I believe it is clear that the Commonwealth did not meet its burden here, where the prosecutor offered no evidence of its diligence in procuring the police officer's appearance to testify at the January 16, 2007 hearing.[5]

Next, on February 1, 2007, the arresting officer in this case failed to appear because he was "in training," and the hearing was continued. N.T., 10/28/08, at 17–18. The prosecutor forthrightly admitted that it had no evidence of its diligence in procuring the police officer's appearance and that the resultant delay should count against the Commonwealth for purposes of Rule 600:

> The next listing was February 1st of 2007; the officer was in training on that day. I have nothing else to say about that date. **I will agree that that would be the Commonwealth's time because the officer is in training. I am unaware of whether or not we knew that prior to the case being given that date on January the 16th, so I don't have an argument as to whether or not we knew and scheduled it on that day anyway.** So I won't argue that because I don't have that information.

N.T., 10/28/08, at 17–18 (emphasis added).

Absent any evidence regarding the service of a subpoena; what protocols were in place to avoid conflicts with officer training dates; and if protocols were in place, why the protocols failed, the prosecutor had no choice but to concede the Commonwealth's

---

5. The Majority notes that the January 16, 2007 hearing became necessary only because of Peterson's previous failure to appear. Majority Opinion, at 13. The law is clear, however, that the Commonwealth must exercise

diligence throughout the pendency of a criminal proceeding. *Kearse,* 890 A.2d at 393 (*citing Commonwealth v. Hawk,* 528 Pa. 329, 336, 597 A.2d 1141, 1145 (1991)).

lack of diligence for this hearing date.[6] Accordingly, the delay resulting from the February 1, 2007 continuance should have been charged to the Commonwealth.

As noted, the delay occasioned by the failure of the Commonwealth's principal witness to appear to testify does not change the Rule 600 conclusion in this case. The Commonwealth acted with diligence throughout the remainder of the prosecution of the first complaint, and the short delay resulting from the officer's failure to appear coupled with the unrequested dismissal of the first complaint does not evince an intent on the part of the Commonwealth to evade the strictures of Rule 600. However, this case brings into focus the problem this Court has created by inconsistently applying the burden of proof required of the Commonwealth to establish its diligence in timely bringing a case to trial.

To establish due diligence in the prosecution of a case for the purpose of Rule 600, in addition to proving that a subpoena to appear and testify was issued and properly served, the Commonwealth must establish that it has *reliable* systems in place to ensure compliance with subpoenas. In those cases where the system fails and the officer does not appear to testify, the Commonwealth must prove that the failure of the system was despite the Commonwealth's efforts. Absent such proof, any delay of trial as a result of the witness' failure to appear should be attributable to the Commonwealth.

We should not take lightly the admonition of our Supreme Court in *Browne* that this Court not "accept any and every ex-

cuse" proffered by the Commonwealth for its witnesses' failure to appear. To do so renders Rule 600 meaningless. It is well established that the Commonwealth, in the face of an alleged Rule 600 violation, bears the burden of proving that it acted with due diligence. *Meadius*, 582 Pa. at 183, 870 A.2d at 807; *Kearse*, 890 A.2d at 393. We have an obligation to uniformly review the record before us on appeal to assure that this evidentiary burden is met instead of giving it only lip service.

With the exception of the foregoing point of disagreement, I join the Majority Opinion.

---

**6.** The record reveals that the arresting officer missed another preliminary hearing, on April 25, 2008, because he was in training. This was the first scheduled preliminary hearing after the filing of the second complaint. Since Peterson filed his Rule 600 motion less than one year after the filing of the second complaint, the issue of the Commonwealth's diligence in connection with the April 25, 2008 hearing is not before us. However, this officer's repeated failure to appear because of conflicting training sessions raises a serious doubt as to whether there is any system in place to avoid such conflicts.